## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IMBERATEK LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD.,<br><br>      Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ImberaTek LLC ("ImberaTek") brings this action against Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus" or "Defendant") and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for patent infringement (hereinafter the "Action"), brought under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking damages and other relief arising out of Defendant's infringement of United States Patent Nos. 8,487,194 (the "194 Patent"), 8,817,485 (the "485 Patent"), 9,107,324 (the "324 Patent"), and 9,883,587 (the "587 Patent") (collectively, the "Asserted Patents").

2.      ImberaTek owns the entire right, title, and interest in and to each of the Asserted Patents.

3.      Defendant has infringed each Asserted Patent by, without ImberaTek's authorization, making, using, offering to sell, and selling in, and/or importing into the United States products including certain semiconductor technology. Further, Defendant has indirectly infringed each Asserted Patent by, without ImberaTek's authorization, making, selling, and supporting

products including certain semiconductor technology knowing that the same will be imported into, sold, and used in the United States and cause direct infringement.

## THE PARTIES

4.     Plaintiff ImberaTek is a Texas corporation with an address at 14205 North Mopac Expressway, 5th Floor Austin, Texas, 78728.

5.     Defendant OnePlus Technology (Shenzhen) Co., Ltd. is a corporation duly organized and existing under the laws of China, with its principal place of business at 18F, Tairan Building, Block C, Tairan 8th Road, Chegongmiao, Futian District, Shenzhen, Guangdong, 518040, China. On information and belief, OnePlus manufactures, sells, offers for sale, and imports mobile phones in and/or for the United States. In addition, OnePlus's mobile telephones are marketed, offered for sale, and/or sold throughout the United States, including within this District.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over ImberaTek's claims of infringement of the Asserted Patents pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (action arising under an Act of Congress relating to patents), 2201 (creation of remedy), and 2202 (further relief). Certain claims in this Action arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

7.     This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas and has committed and continues to commit acts of patent infringement in the United States, including in the State of Texas, by making, using, offering to sell, and/or selling Accused Products (as defined herein) in the United States and Texas, and/or importing Accused Products into the United States and Texas. In addition, Defendant conducts its business extensively throughout Texas, and derives substantial revenue in Texas, by

shipping, distributing, offering for sale, selling, and advertising (including through an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. Defendant has purposefully and voluntarily placed in the stream of commerce one or more products and/or services that practice the Asserted Patents (as set forth below) with the intention and expectation that they will be imported into, and purchased and used by consumers in, the Eastern District of Texas. For example, OnePlus advertises its products (including those accused in this Complaint) for purchase on its webpage, accessible from the United States, including Texas, such as at https://www.oneplus.com/us/store. Further, https://www.oneplus.com includes a "Use of Cookies" webpage in the "Legal" section of the website (https://www.oneplus.com/legal/use-of-cookies) that states "This Cookie Policy explains how **OnePlus Technology (Shenzhen) Co., Ltd** (referred to as we, us or OnePlus), uses cookies on **our website at https://www.oneplus.com**." (emphasis added).

8.    In addition, Defendant has sought FCC approval for several products it has imported, sold, and offered for sale in the United States, including, on information and belief, several of the phone products accused of infringement herein. *See* https://fcc.report/company/Oneplus-Technology-Shenzhen-Co-L-T-D   (identifying   OnePlus Technology (Shenzhen), Co., Ltd. as the filer of FCC applications for, on information and belief, at least the following OnePlus Accused Products: 8, 8 Pro, 9 Pro, 10 Pro, Nord N20, Nord N30, Nord 200, 10T, 11, Open, Pad 2, Pad 3, 12R, 13, and 13R).

9.    In addition, OnePlus, directly via its agents and distribution partners, retailers, reseller partners, and other service providers in the United States, has placed and continues to place infringing Accused Products into the U.S. stream of commerce. OnePlus has placed such products into the stream of commerce with the knowledge and understanding that such products are, will

be, and continue to be sold, offered for sale, and/or imported into this judicial District and the State of Texas. In that regard, OnePlus utilizes established distribution channels to distribute, market, offer for sale, sell, and service infringing products directly to consumers and other users in the United States, including providing links via its website to online stores, retailers, resellers, and distributors offering such products and related services for sale. For example, OnePlus has advertised on its website (for example, https://www.oneplus.com/us/tmo-deals) that Accused Products are available for purchase at T-Mobile, and certain of its Accused Products are available for purchase directly from T-Mobile (https://www.t-mobile.com/offers/oneplus-phone-deals), Amazon                                 (https://www.amazon.com/OnePlus-Unlocked-Dual-SIM-Charging-Chromatic/dp/B0C22BRGLG), and Best Buy (https://www.bestbuy.com/product/oneplus-nord-n30-5g-128gb-unlocked-chromatic-gray/CZYJW5VVQC/sku/6543735). Accused Products have been sold in both retail stores (online and brick and mortar) within this judicial District and within the State of Texas. For example, as shown below, the accused OnePlus Nord N30 product has been available for purchase at the Best Buy location in Longview, Texas, and the accused OnePlus 13 product has been available for purchase at the Best Buy location in Tyler, Texas.





10.     Further, on information and belief, OnePlus has engaged in the aforementioned infringing activities through, and in concert with subsidiaries, affiliates, or intermediaries, some or all of which are OnePlus's agents or alter egos. That concerted action between OnePlus and its

subsidiaries is so deep and the degree of control OnePlus asserts over such subsidiaries is so dominant that there is no practical or apparent distinction between OnePlus and its subsidiaries.

11.     OnePlus previously admitted to transacting business in this District and consented to jurisdiction in this District, for example in *Altpass LLC v. OnePlus Technology (Shenzhen) Co., Ltd.*, No. 2-20-cv-00105, Dkt. 21 at 1 (E.D. Tex. Oct. 21, 2020) ("OnePlus admits it transacts business within the State of Texas . . . .").

12.     In addition, or in the alternative, this Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2).

13.     Venue is proper in this district as to Defendant, which is organized under the laws of China. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

## FACTUAL ALLEGATIONS

### A.     Background

14.     This lawsuit involves significant, groundbreaking advancements in the manufacturing of semiconductor devices. These innovations were developed by Imbera Electronics Oy, a pioneering Finnish company which started to develop embedded electronics packaging technology and manufacturing solutions decades ago. Over the years, these innovations have enabled significant advancements in the field.

15.     The Asserted Patents are generally directed to novel and non-obvious techniques to leverage semiconductors in electronic modules such as printed circuit boards and package substrates. The inventions of the Asserted Patents provide technical, manufacturing, and economical advantages by, for example, designing an electronic module with solid bump contact

zones to improve a conductive-pattern layer (485 Patent at 2:62-5:35) and manufacturing components with specific contact surfaces (324 Patent at 3:10-4:41, 194 Patent at 1:48-2:56, 587 Patent at 3:15-4:50).

**B.    The Asserted Patents**

16.    The 194 Patent is titled "Circuit Board Including An Embedded Component" and issued on July 16, 2023. The named inventors on the 194 Patent are Risto Tuominen and Petteri Palm. A true and correct copy of the 194 Patent is attached hereto as Exhibit 1.

17.    The 485 Patent is titled "Single-Layer Component Package" and issued on August 26, 2014. The 485 Patent is a continuation-in-part of U.S. Patent No. 7,609,527 (the "527 Patent"). The named inventors on the 485 Patent are Risto Tuominen and Petteri Palm. A true and correct copy of the 485 Patent is attached hereto as Exhibit 2.

18.    The 324 Patent is titled "Circuit Module and Method of Manufacturing the Same" and issued on August 11, 2015. The named inventors on the 324 Patent are Petteri Palm, Risto Tuominen, and Antti Iihola. A true and correct copy of the 324 Patent is attached hereto as Exhibit 3.

19.    The 587 Patent is titled "Circuit Module and Method of Manufacturing the Same" and issued on January 30, 2018. The 587 Patent is a continuation of the 324 Patent. The named inventors of the 587 Patent are Petteri Palm, Risto Tuominen, and Antti Iihola. A true and correct copy of the 587 Patent is attached hereto as Exhibit 4.

20.    ImberaTek is the owner of all rights, title, and interest in and to the Asserted Patents. ImberaTek possesses all rights to sue and recover past and future damages for any infringement of the Asserted Patents.

### C.      The Accused Products and Infringing Activities

21.      Defendant offers or has offered several products, including but not limited to, OnePlus's 8, 8 Pro, 9 5G, 9 Pro, 10 Pro 5G, 10T 5G, 11 5G, 12, 12R, 13, 13R, Nord N20, Nord N30, Nord N200, Open, Pad 2, and Pad 3 mobile phone products (the "Accused Products"), which include, without limitation, infringing Power Management Integrated Circuits ("PMICs"), such as the PM6150L, PM8150A, PM8150B, PM8250, PM8550BH, PM8550BHS, PM8350, PM8350BHS, PM8350C, PM8450, PM6350, PM7250B, PM6375, 3R2, and 4C3 PMIC components. *See* Exhibits 11-54. On information and belief, the 8 and 8 Pro include the PM8150A, PM8150B, and PM8250 PMICs, the 9 and 9 Pro include the PM8350, PM8350C, and PM8350BHS PMICs, the 10 Pro and 10T include the PM8350, PM8350C, PM8450, and PM8350BHS PMICs, the 11, 12R, and Open include the PM8550BHS PMIC, the 12 includes the 3R2 and PM8550BHS PMICs, the 13 and Pad 3 include the 4C3 and 3R2 PMICs, the 13R and Pad 2 include the 3R2 and PM8550BH PMICs, the N20 and N30 include the PM6375 PMIC, and the N200 includes the PM6350, PM6150L, and PM7250B PMICs.

22.      For example and without limitation of the foregoing, the PM8550BHS is part of the System-on-a-Chip (SoC) used in the OnePlus 11 5G.[1] On information and belief, Defendant began offering the 11 5G for sale in February 2023[2] and has been, and is currently, selling, and supporting the use of, the 11 5G in the United States.[3]

23.      Defendant has infringed and is infringing the Asserted Patents by making, using, offering to sell, importing, and selling (directly or through intermediaries) at least the Accused

---

[1] *See* https://www.oneplus.com/us/11/specs.
[2] https://web.archive.org/web/20230208045422/https://www.oneplus.com/us/11.
[3]      *See*      https://www.oneplus.com/us/11;      https://www.amazon.com/OnePlus-Dual-SIM-Smartphone-Hasselblad-Processor/dp/B0BNWPSCGB?th=1.

Products in this Judicial District and elsewhere in the United States. Further, Defendant has indirectly infringed the Asserted Patents by, without ImberaTek's authorization, making, selling, and/or supporting the Accused Products knowing that the same will be imported into, sold, and used in this Judicial District and elsewhere in the United States and cause direct infringement.

24.    As detailed below, each element of at least one claim of at least one of the Asserted Patents is literally present in each Accused Product. To the extent that any element is not literally present, each such element is present under the doctrine of equivalents because it performs substantially the same function in substantially the same way to achieve substantially the same result, and any differences between the accused product and claim element are insubstantial.

### D.    The Negotiations Between the Parties and Defendant's Knowledge of the Asserted Patents

25.    On information and belief, Defendant has been aware of the Asserted Patents since at least January 27, 2021 when ImberaTek sent a letter to Defendant (i) asserting that Defendant was "likely utilizing and causing its customers and users to utilize," *inter alia*, the 324 Patent and "should explore taking a license from ImberaTek to cover both its past and future utilization of" that patent, (ii) including an "exemplary listing of our patents" on an Exhibit A that included the 194, 587 and 485 Patents, and (iii) stating that "ImberaTek expects that you may currently be using, or will in the future be using, additional patented inventions from this portfolio." *See* Ex. 5. ImberaTek further informed Defendant that it "is willing to immediately negotiate a license under its patent portfolio" and "would like to explore an amicable business resolution . . . ." *See id.* On February 22, 2024, ImberaTek sent a follow up email to Defendant stating "we have exemplary claim charts showing how OnePlus uses," and, in particular how the OnePlus 9 and 10T products use, *inter alia*, the 485 and 324 Patents, and stated that "OnePlus's utilization of ImberaTek's

patents is not limited to these patents or products - as we believe that OnePlus has consistently used many of our patents since 2021." *See* Ex. 6.

26.    Defendant responded to that email on February 27, 2024 requesting that the parties sign a non-disclosure agreement ("NDA"). *See* Ex. 7. Recognizing that Defendant's request was a delay tactic, ImberaTek stated it did not think an NDA was necessary but, in order to keep the negotiations going forward and, as an act of good faith, ImberaTek sent an NDA to Defendant on March 6, 2024. *See id*. Defendant, however, did not respond, and on March 25, 2024 and April 18, 2025, ImberaTek followed up with Defendant on the NDA, and, in the April 18th email, asked Defendant "Do you intend to respond?  Or does OnePlus intend to continue wil[l]fully infringing our patents without discussion?" *See id*.

27.    On June 5, 2024, ImberaTek sent Defendant detailed, representative claim charts reading several ImberaTek patents, including the 485 and 324 Patents, on example products of Defendant, *i.e.*, the 9 5G and 10T 5G mobile phones. *See* Ex. 8. Consistent with its strategy of delay, Defendant did not respond. Therefore, having not heard back from Defendant, on July 8, 2024, July 31, 2024, and September 19, 2024, ImberaTek followed up with Defendant on the claim charts. *See id*. In the September 19th email, ImberaTek stated "With your continued silence and refusal to engage, ImberaTek has to assume that OnePlus' intention is to continue to willfully use ImberaTek's patent without a license." *See id*.

28.    On October 22, 2024, ImberaTek advised Defendant that it "also utilizes and causes its customers and users to utilize [the 194 Patent].  By way of non-limiting example, the processors in your cell phones use this patent.  This is a further example of why OnePlus requires a license to ImberaTek's patent portfolio." *See* Ex. 9. ImberaTek followed up with Defendant on December

23, 2024, introducing a new contact for Defendant to communicate with, but, on information and belief, ImberaTek has not heard from Defendant since that date. *See* Ex. 10.

29.    Over the course of five years, ImberaTek was met with ignored communications, delay, and prolonged periods of silence. Defendant did not offer to pay for a license or diligently negotiate in good faith. Defendant instead engaged in holdout behavior, all while knowingly and willfully continuing to infringe.

30.    In light of the foregoing, Defendant, on information and belief, by no later than January 27, 2021, was provided actual notice of infringement of each Asserted Patent, knew of each of the Asserted Patents, and knew or should have known since that date that the manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed each of the Asserted Patents. Additionally, for the 485 and 324 Patents, Defendant, by no later than February 22, 2024, was provided actual notice of infringement of the 485 and 324 Patents, knew of the 485 and 324 Patents, and knew or should have known since that date that the manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed each of the 485 and 324 Patents. Additionally, for the 194 Patent, Defendant, by no later than October 22, 2024, was provided actual notice of infringement of the 194 Patent, knew of the 194 Patent, and knew or should have known since that date that the manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed the 194 Patent. Additionally, Defendant has knowledge of the 324, 587, and 194 Patents and its infringement thereof by the date on which this Complaint was filed.

### E.    Claims for Patent Infringement

31.    The allegations provided below are exemplary and without prejudice to ImberaTek's infringement contentions provided pursuant to the Court's scheduling order and local rules. In providing these allegations, ImberaTek does not provide or imply any particular claim

construction or the precise scope of the claims. ImberaTek's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

32.    The below infringement allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Product. ImberaTek reserves the right to modify this description, including, for example, on the basis of information that it obtains during discovery about the Accused Product and the Asserted Patents.

33.    To the extent any patentee's or licensee's product was sold in the United States that embodied an Asserted Patent and was not marked with that Patent, ImberaTek is, nevertheless, entitled to past damages for that Patent for any period in which any such unmarked products were not sold in the United States, and for the entire period after actual notice occurred as described *supra*.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,107,324

34.    ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

35.    Defendant, without ImberaTek's authority, has been making, using, offering to sell, selling, and importing, and continues to make, use, offer to sell, sell, and import, in the United States at least the Accused Products, certain of which directly infringe one or more claims of the 324 Patent, literally or under the doctrine of equivalents.

36.    The claims of the 324 Patent are valid and enforceable.

37.    At least the 8, 8 Pro, 9 5G, 9 Pro, Open, 10 Pro 5G, 10T 5G, 11 5G, Nord N20, Nord N30, Nord N200, 12, 12R, 13, 13R, Pad 2, and Pad 3, and any other OnePlus products made, sold, or used in the United States, or imported into the United States during the term of the 324

Patent having the same or similar infringing PMIC components (the PM6150L, PM8150A, PM8150B, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs) as the forgoing specifically identified product models (the "324 Accused Products"), infringe at least one claim of the 324 Patent. For example, claim 17 recites:

> Circuit module, comprising
>
> a conductor layer comprising conductors, the conductors having a first surface and a second surface and at least two layers of metal between the first surface and the second surface;
>
> a first insulator layer having a first surface and a second surface, the second surface of the first insulator layer covering the first surface of the conductors;
>
> at least one second insulator layer on the first surface of the first insulator layer;
>
> at least one component inside the at least one second insulator layer, the at least one component comprising contact terminals containing at least one layer of metal;
>
> contact elements between at least some of the contact terminals and at least some of the conductors for forming electrical contacts, the contact elements comprising an intermediate layer on the surface of the contact terminal, the intermediate layer containing at least one layer of metal, a contact surface area ($A_{CONT\,1}$) between the intermediate layer and the contact terminal being less than a surface area ($A_{PAD}$) of the contact terminal;
>
> at least one layer of metal in the contact terminals containing a first metal;
>
> at least one layer of metal in the conductors containing a second metal; and
>
> the intermediate layer containing a third metal.

38.     The 324 Accused Products and Defendant's infringing activities violate one or more subsections of 35 U.S.C. § 271.

39.     On information and belief, Defendant has infringed and continues to infringe in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims of the 324 Patent, including at least claim 17, by making, using, offering to sell, selling, and

importing the 324 Accused Products without authority or license. The 324 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 324 Patent. In that regard, the exemplary claim charts attached as Exhibits 11-23 show how the 324 Accused Products include each element of claim 17 of the 324 Patent. Defendant thereby has directly infringed one or more claims of the 324 Patent.

40.     As shown in the charts, the 324 Accused Products include a "[c]ircuit module, comprising: a conductor layer comprising conductors, the conductors having a first surface and a second surface and at least two layers of metal between the first surface and the second surface." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs used in the 324 Accused Products show a circuit module with a conductor layer including conductors having a first surface and a second surface and at least two layers of metal, *i.e.*, copper and titanium, between the first surface and the second surface. *See* Exhibits 11-23.

41.     As also shown in the charts, the 324 Accused Products include "a first insulator layer having a first surface and a second surface, the second surface of the first insulator layer covering the first surface of the conductors." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs used in the 324 Accused Products show a first insulator layer having a first surface and a second surface, the second surface of the first insulator layer covering the first surface of the conductors. *See* Exhibits 11-23.

42.     As further shown in the charts, the 324 Accused Products include "at least one second insulator layer on the first surface of the first insulator layer." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350,

PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs used in the 324 Accused Products show a circuit module with at least one second insulator layer on the first surface of the first insulator layer. *See* Exhibits 11-23.

43.     As further shown in the charts, the 324 Accused Products include "at least one component inside the at least one second insulator layer, the at least one component comprising contact terminals containing at least one layer of metal." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs used in the 324 Accused Products show at least one component inside the at least one second insulator layer, the at least one component including contact terminals containing at least one layer of metal. *See* Exhibits 11-23.

44.     As further shown in the charts, the 324 Accused Products include "contact elements between at least some of the contact terminals and at least some of the conductors for forming electrical contacts, the contact elements comprising an intermediate layer on the surface of the contact terminal, the intermediate layer containing at least one layer of metal, a contact surface area ($A_{CONT\ 1}$) between the intermediate layer and the contact terminal being less than a surface area ($A_{PAD}$) of the contact terminal." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs used in the 324 Accused Products show contact elements between at least some of the contact terminals and at least some of the conductors for forming electrical contacts, the contact elements including an intermediate layer on the surface of the contact terminal, the intermediate layer containing at least one layer of metal, *i.e.*, titanium, a contact surface area ($A_{CONT\ 1}$) between the intermediate layer and the contact terminal being less than a surface area ($A_{PAD}$) of the contact terminal. *See* Exhibits 11-23.

45.     As further shown in the charts, the 324 Accused Products include "at least one layer of metal in the contact terminals containing a first metal." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs from the 324 Accused Products show at least one layer of metal in the contact terminals containing a first metal, *i.e.*, aluminum. *See* Exhibits 11-23.

46.     As further shown in the charts, the 324 Accused Products include "at least one layer of metal in the conductors containing a second metal." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs from the 324 Accused Products show at least one layer of metal in the conductors containing a second metal, *i.e.*, copper or titanium. *See* Exhibits 11-23.

47.     As further shown in the charts, the 324 Accused Products include "the intermediate layer containing a third metal." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6375, PM6350, PM7250B, PM8550BH, 4C3, 3R2, and PM8550BHS PMICs from the 324 Accused Products show the intermediate layer containing a third metal, *i.e.*, titanium. *See* Exhibits 11-23.

48.     By at least January 27, 2021, ImberaTek disclosed the existence of the 324 Patent to Defendant and informed Defendant that it was "likely utilizing and causing its customers and users to utilize" the 324 Patent and "should explore taking a license from ImberaTek to cover both its past and future utilization of" that patent. On February 22, 2024, ImberaTek informed Defendant it had claims charts showing how specific products of Defendant used the 324 Patent and, on or around June 5, 2024, ImberaTek sent Defendant claim charts reading the 324 Patent on

Defendant's products. Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on information and belief, Defendant has had knowledge of the 324 Patent and that its activities infringe the 324 Patent since at least January 27, 2021 and no later than February 22, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least January 27, 2021 and no later than February 22, 2024 that its customers, distributors, and other purchasers of the 324 Accused Products infringed the 324 Patent at least because Defendant had knowledge of its infringement of the 324 Patent.

49.    In addition and in the alternative, by at least the date on which this Complaint was filed, ImberaTek disclosed the existence of the 324 Patent to Defendant and identified at least some of Defendant's activities that infringe the 324 Patent. Thus, Defendant has had knowledge of the 324 Patent and that its activities infringe the 324 Patent since at least the date on which this Complaint was filed. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least the date on which this Complaint was filed that its customers, distributors, and other purchasers of the 324 Accused Products are infringing the 324 Patent at least because Defendant has known that it is infringing the 324 Patent.

50.    Defendant's acts of infringement of the 324 Patent have been committed and are being committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and belief, and for at least the reasons discussed above, Defendant could not reasonably or subjectively have believed that its actions do or did not constitute infringement of the 324 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and

deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

51.     On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 324 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 324 Accused Products in the United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 324 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website   (*e.g.*,   https://web.archive.org/web/20230208045422/https://www.oneplus.com/us/11), press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the 324 Accused Products or products containing infringing chips in the 324 Accused Products. Defendant also manufactured the 324 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 324 Patent and its infringement since at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

52.     On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed and continues to contributorily infringe one or more claims of the 324 Patent by offering to sell, selling, and/or importing into the United States material components of the 324 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 324 Patent, and which are not a staple article or commodity of commerce

suitable for substantial non-infringing use. For example, the 324 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 17 of the 324 Patent for the reasons set forth above.

53.     The infringing semiconductor chips of the 324 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

54.     ImberaTek has suffered and continues to suffer damages as a result of Defendant's infringement of the 324 Patent.

## **COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,487,194**

55.     ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.     Defendant, without ImberaTek's authority, has been making, using, offering to sell, selling, and importing, and continues to make, use, offer to sell, sell, and import, in the United States at least the Accused Products, certain of which directly infringe one or more claims of the 194 Patent, literally or under the doctrine of equivalents.

57.     The claims of the 194 Patent are valid and enforceable.

58.     At least the 8, 8 Pro, Open, Pad 2, Pad 3, 11 5G, Nord N20, Nord N30, Nord N200, 12, 12R, 13, and 13R, and, on information and belief and the opportunity for further investigation and discovery, the 9, 9 Pro, 10 Pro, and 10T, and any other OnePlus products made, sold, or used in the United States, or imported into the United States during the term of the 194 Patent having the same or similar infringing PMIC components (the PM6150L, 4C3, 3R2, PM6375, PM8150A, PM8150A, PM8250, PM8550BH, PM8550BHS, and PM7250B PMICs) as the forgoing

specifically identified product models (the "194 Accused Products"), infringe at least one claim of the 194 Patent. For example, claim 1 recites:

A circuit board, comprising:

a conductor-pattern layer;

an insulating-material layer supporting the conductor-pattern layer;

at least one component inside the insulating-material layer, the component having a plurality of contact areas;

a set of contact elements between the conductor-pattern layer and contact areas for electrically connecting the conductor-pattern layer and the at least one component;

wherein the set of contact elements comprise a plurality of individual contact elements for at least one single contact area in said plurality of contact areas.
.

59.    The 194 Accused Products and Defendant's infringing activities violate one or more subsections of 35 U.S.C. § 271.

60.    On information and belief, Defendant has infringed and continues to infringe in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims of the 194 Patent, including at least claim 1, by making, using, offering to sell, selling, and importing the 194 Accused Products without authority or license. The 194 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 194 Patent. In that regard, the exemplary claim charts attached as Exhibits 24-31 show how the 194 Accused Products include each element of claim 1 of the 194 Patent. Defendant thereby has directly infringed one or more claims of the 194 Patent.

61.    As shown in the charts, the 194 Accused Products include "[a] circuit board, comprising: a conductor-pattern layer." For example, cross sections of the 4C3, 3R2, PM6375, PM8150A, PM8250, PM8550BH, PM8550BHS, and PM7250B PMICs used in the 194 Accused Products show a circuit board with a conductor-pattern layer. *See* Exhibits 24-31.

62.    As also shown in the charts, the 194 Accused Products include "an insulating-material layer supporting the conductor-pattern layer." For example, cross sections of the 4C3, 3R2, PM6375, PM8150A, PM8250, PM8550BH, PM8550BHS, and PM7250B PMICs used in the 194 Accused Products show an insulating-material layer supporting the conductor-pattern layer. *See* Exhibits 24-31.

63.    As further shown in the charts, the 194 Accused Products include "at least one component inside the insulating-material layer, the component having a plurality of contact areas." For example, cross sections of the 4C3, 3R2, PM6375, PM8150A, PM8250, PM8550BH, PM8550BHS, and PM7250B PMICs used in the 194 Accused Products show at least one component inside the insulating-material layer, the component having a plurality of contact areas. *See* Exhibits 24-31.

64.    As further shown in the charts, the 194 Accused Products include "a set of contact elements between the conductor-pattern layer and contact areas for electrically connecting the conductor-pattern layer and the at least one component." For example, cross sections of the 4C3, 3R2, PM6375, PM8150A, PM8250, PM8550BH, PM8550BHS, and PM7250B PMICs used in the 194 Accused Products show a set of contact elements between the conductor-pattern layer and contact areas for electrically connecting the conductor-pattern layer and the at least one component, as seen in an Energy Dispersive X-Ray ("EDX") copper layer image showing a copper conductor-pattern layer and copper contact elements. *See* Exhibits 24-31.

65.    As further shown in the charts, the 194 Accused Products include "wherein the set of contact elements comprise a plurality of individual contact elements for at least one single contact area in said plurality of contact areas." For example, cross sections of the 4C3, 3R2, PM6375, PM8150A, PM8250, PM8550BH, PM8550BHS, and PM7250B PMICs used in the 194

Accused Products show that the set of contact elements include a plurality of individual contact elements for at least one single contact area in the plurality of contact areas. *See* Exhibits 24-31.

66.     By at least January 27, 2021, ImberaTek disclosed the existence of the 194 Patent to Defendant in an "exemplary listing of our patents" and stated that "ImberaTek expects that you may currently be using, or will in the future be using, additional patented inventions from this portfolio."  And by at least October 22, 2024, ImberaTek advised Defendant that it "utilizes and causes its customers and users to utilize [the 194 Patent].  By way of non-limiting example, the processors in your cell phones use this patent.  This is a further example of why OnePlus requires a license to ImberaTek's patent portfolio." Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on information and belief, Defendant has had knowledge of the 194 Patent and that its activities infringe the 194 Patent since at least January 27, 2021 and no later than October 22, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least January 27, 2021 and no later than October 22, 2024 that its customers, distributors, and other purchasers of the 194 Accused Products infringed the 194 Patent at least because Defendant had knowledge of its infringement of the 194 Patent.

67.     In addition and in the alternative, by at least the date on which this Complaint was filed, ImberaTek disclosed the existence of the 194 Patent to Defendant and identified at least some of Defendant's activities that infringe the 194 Patent. Thus, Defendant has had knowledge of the 194 Patent and that its activities infringe the 194 Patent since at least the date on which this Complaint was filed. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least the date on which this Complaint was filed that its customers, distributors, and other purchasers of the 194 Accused Products are infringing the 194 Patent at least because Defendant has known that it is infringing the 194 Patent.

68.     Defendant's acts of infringement of the 194 Patent have been committed and are being committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and belief, and for at least the reasons discussed above, Defendant could not reasonably or subjectively have believed that its actions do or did not constitute infringement of the 194 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

69.     On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 194 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 194 Accused Products in the United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 194 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website  (*e.g.*,   https://web.archive.org/web/20230208045422/https://www.oneplus.com/us/11), press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the 194 Accused Products or products containing infringing chips in the 194 Accused Products. Defendant also manufactured the 194 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 194 Patent

and its infringement since at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

70.     On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed and continues to contributorily infringe one or more claims of the 194 Patent by offering to sell, selling, and/or importing into the United States material components of the 194 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 194 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use. For example, the 194 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 1 of the 194 Patent for the reasons set forth above.

71.     The infringing semiconductor chips of the 194 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

72.     ImberaTek has suffered and continues to suffer damages as a result of Defendant's infringement of the 194 Patent.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,817,485

73.     ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.     During the term of the 485 Patent, the 485 Patent was valid and enforceable, and Defendant, without ImberaTek's authority, made, used, offered to sell, sold, and imported into the United States at least the Accused Products, certain of which directly infringe one or more claims of the 485 Patent, literally or under the doctrine of equivalents.

75.     At least the 8, 8 Pro, 9 5G, 9 Pro, Open, 10 Pro G, 10T 5G, Nord N30, 11 5G, Nord N200, 12, 12R, and Nord N20, and any other OnePlus products made, sold, or used in the United States, or imported into the United States during the term of the 485 Patent having the same or similar infringing PMIC components (the PM6150L, PM8150A, PM8150B, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6350, PM6375, PM7250B, and PM8550BHS PMICs) as the forgoing specifically identified product models (the "485 Accused Products"), infringe at least one claim of the 485 Patent. For example, claim 20 recites:

A single-layer component package, comprising:

a single conductive-pattern layer comprising a first conductive material extending throughout the single conductive-pattern layer;

a semiconductor chip having contact pads facing the single conductive-pattern layer;

an insulating-material layer supporting the single conductive-pattern layer and surrounding the semiconductor chip; and solid contact bumps solderlessly, metallurgically and electrically connecting the contact pads to the single conductive-pattern layer, at least part of each solid contact bump being made of copper, and

wherein the single conductive-pattern layer is the only conductive-pattern layer within the single-layer component package.

76.     The 485 Accused Products and Defendant's infringing activities violate one or more subsections of 35 U.S.C. § 271.

77.     On information and belief, Defendant infringed, in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims of the 485 Patent, including at least claim 20, by making, using, offering to sell, selling, and importing the 485 Accused Products without authority or license. The 485 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 485 Patent. In that regard, the exemplary claim charts attached as Exhibits 32-41 show how the 485 Accused Products include

each element of claim 20 of the 485 Patent. Defendant thereby has directly infringed one or more claims of the 485 Patent.

78.    As shown in the charts, the 485 Accused Products include "[a] single-layer component package, comprising: a single conductive-pattern layer comprising a first conductive material extending throughout the single conductive-pattern." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6350, PM6375, PM7250B, and PM8550BHS PMICs used in the 485 Accused Products show a single conductive-pattern layer including a first conductive material extending throughout the single conductive-pattern, where a copper EDX map shows the first conductive material is copper. *See* Exhibits 32-41.

79.    As also shown in the charts, the 485 Accused Products include "a semiconductor chip having contact pads facing the single conductive-pattern layer." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6350, PM6375, PM7250B, and PM8550BHS PMICs used in the 485 Accused Products show a semiconductor chip having contact pads facing the single conductive-pattern layer. *See* Exhibits 32-41.

80.    As further shown in the charts, the 485 Accused Products include "an insulating-material layer supporting the single conductive-pattern layer and surrounding the semiconductor chip." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6350, PM6375, PM7250B, and PM8550BHS PMICs used in the 485 Accused Products show an insulating-material layer supporting the single conductive-pattern layer and surrounding the semiconductor chip as seen in an EDX map illustrating the insulating-material layer including insulating materials such as oxygen and silicon. *See* Exhibits 32-41.

81.    As further shown in the charts, the 485 Accused Products include "solid contact bumps solderlessly, metallurgically and electrically connecting the contact pads to the single

conductive-pattern layer, at least part of each solid contact bump being made of copper." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6350, PM6375, PM7250B, and PM8550BHS PMICs used in the 485 Accused Products show solid contact bumps solderlessly, metallurgically, and electrically connecting the contact pads to the single conductive-pattern layer and, as seen in an EDX map, at least part of each solid contact bump is made of copper. *See* Exhibits 32-41.

82.      As further shown in the charts, the 485 Accused Products include "wherein the single conductive-pattern layer is the only conductive-pattern layer within the single-layer component package." For example, cross sections of the PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM6350, PM6375, PM7250B, and PM8550BHS PMICs used in the 485 Accused Products show that the single conductive-pattern layer is the only conductive-pattern layer within the single-layer component package. Exhibits 32-41.

83.      By at least January 27, 2021, ImberaTek disclosed the existence of the 485 Patent to Defendant in an "exemplary listing of our patents" and stated that "ImberaTek expects that you may currently be using, or will in the future be using, additional patented inventions from this portfolio." Further, the 485 Patent is a continuation-in-part of the 527 Patent, and, on January 27, 2021, ImberaTek disclosed the existence of the 527 Patent to Defendant and informed Defendant that it was "likely utilizing and causing its customers and users to utilize" the 527 Patent and "should explore taking a license from ImberaTek to cover both its past and future utilization of" that patent. *See* Exhibit 5. On February 22, 2024, ImberaTek informed Defendant it had claims charts showing how specific products of Defendant used the 485 Patent, and, on or around June 5, 2024, ImberaTek sent Defendant claim charts reading the 485 Patent on Defendant's products. Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on

information and belief, Defendant has had knowledge of the 485 Patent and that its activities infringe the 485 Patent since at least January 27, 2021 and no later than February 22, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least January 27, 2021 and no later than February 22, 2024 that its customers, distributors, and other purchasers of the 485 Accused Products infringed the 485 Patent at least because Defendant had knowledge of its infringement of the 485 Patent.

84.    Defendant's acts of infringement of the 485 Patent have been committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and belief, and for at least the reasons discussed above, Defendant could not reasonably or subjectively have believed that its actions do or did not constitute infringement of the 485 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

85.    On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 485 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 485 Accused Products in the United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 485 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (*e.g.*, https://web.archive.org/web/20230208045422/https://www.oneplus.com/us/11), press releases, and user manuals, as well as at trade shows and through its sales and distribution

channels that encourage infringing sales, offers to sell, and importation of the 485 Accused Products or products containing infringing chips in the 485 Accused Products. Defendant also manufactured 485 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 485 Patent and its infringement since at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

86.     On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed one or more claims of the 485 Patent by offering to sell, selling, and/or importing into the United States material components of the 485 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 485 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use. For example, the 485 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 20 of the 485 Patent for the reasons set forth above.

87.     The infringing semiconductor chips of the 485 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

88.     ImberaTek has suffered and continues to suffer damages as a result of Defendant's infringement of the 485 Patent.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,883,587

89.     ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

90.     Defendant, without ImberaTek's authority, has been making, using, offering to sell, selling, and importing, and continues to make, use, offer to sell, sell, and import, in the United States at least the Accused Products, certain of which directly infringe one or more claims of the 587 Patent, literally or under the doctrine of equivalents.

91.     The claims of the 587 Patent are valid and enforceable.

92.     At least the OnePlus 8, 8 Pro, 9 5G, 9 Pro, 10 Pro, 10T 5G, 11 5G, 12, 12R, 13, 13R, Nord N20, Nord N30, Nord N200, Pad 2, Pad 3, and Open, and any other OnePlus products made, sold, or used in the United States, or imported into the United States during the term of the 587 Patent having the same or similar infringing PMIC components (the PM6150L, 4C3, 3R2, PM6350, PM6375, PM7250B, PM8150A, PM8150B, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM8550BH, and PM8550BHS PMICs) as the forgoing specifically identified product models (the "587 Accused Products"), infringe at least one claim of the 587 Patent. For example, claim 1 recites:

> A circuit module, comprising
>
> an insulator layer;
>
> at least one component inside the insulator layer, the at least one component comprising contact terminals with contact surfaces of alumin[]um;
>
> contact elements on the surface of the contact terminals, the contact elements comprising an intermediate layer of at least one metal other than alumin[]um directly on the contact surfaces of the component and at least one layer of copper on a surface of the intermediate layer; and
>
> conductor pattern on a surface of the insulator layer and in contact with the contact elements, conductors of the conductor pattern comprising an intermediate layer of the same at least one metal than the intermediate layer of the contact elements and at least one layer of copper on a first surface of the intermediate layer.

93.     The 587 Accused Products and Defendant's infringing activities violate one or more subsections of 35 U.S.C. § 271.

94.    On information and belief, Defendant has infringed and continues to infringe in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims of the 587 Patent, including at least claim 1, by making, using, offering to sell, selling, and importing the 587 Accused Products without authority or license. The 587 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 587 Patent. In that regard, the exemplary claim charts attached as Exhibits 42-54 show how the 587 Accused Products include each element of claim 1 of the 587 Patent. Defendant thereby has directly infringed one or more claims of the 587 Patent.

95.    As shown in the charts, the 587 Accused Products include "[a] circuit module, comprising an insulator layer." For example, cross sections of the 4C3, 3R2, PM6350, PM6375, PM7250B, PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM8550BH, and PM8550BHS PMICs used in the 587 Accused Products show a circuit module with an insulating layer as seen in an EDX map illustrating the insulator layer including insulating materials such as oxygen and silicon. *See* Exhibits 42-54.

96.    As also shown in the charts, the 587 Accused Products include "at least one component inside the insulator layer, the at least one component comprising contact terminals with contact surfaces of alumin[]um." For example, cross sections of the 4C3, 3R2, PM6350, PM6375, PM7250B, PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM8550BH, and PM8550BHS PMICs used in the 587 Accused Products show a component inside the insulator layer that includes contact terminals with contact surfaces of aluminum. *See* Exhibits 42-54.

97.    As further shown in the charts, the 587 Accused Products include "contact elements on the surface of the contact terminals, the contact elements comprising an intermediate layer of at least one metal other than alumin[]um directly on the contact surfaces of the component and at

least one layer of copper on a surface of the intermediate layer." For example, cross sections of the 4C3, 3R2, PM6350, PM6375, PM7250B, PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM8550BH, and PM8550BHS PMICs used in the 587 Accused Products show contact elements on the surface of the contact terminals, with the contact elements including an intermediate layer of a metal other than aluminum, *i.e.*, titanium, directly on the contact surfaces of the component and at least one layer of copper on a surface of the intermediate layer. *See* Exhibits 42-54.

98.    As further shown in the charts, the 587 Accused Products include a "conductor pattern on a surface of the insulator layer and in contact with the contact elements, conductors of the conductor pattern comprising an intermediate layer of the same at least one metal than the intermediate layer of the contact elements and at least one layer of copper on a first surface of the intermediate layer." For example, cross sections of the 4C3, 3R2, PM6350, PM6375, PM7250B, PM8150A, PM8250, PM8350, PM8350C, PM8350BHS, PM8450, PM8550BH, and PM8550BHS PMICs used in the 587 Accused Products show a conductor pattern on a surface of the insulator layer and in contact with the contact elements, conductors of the conductor pattern including an intermediate layer of the same at least one metal as the intermediate layer of the contact elements, *i.e.*, titanium, and at least one layer of copper on a first surface of the intermediate layer. *See* Exhibits 42-54.

99.    By at least January 27, 2021, ImberaTek disclosed the existence of the 587 Patent to Defendant in an "exemplary listing of our patents" and stated that "ImberaTek expects that you may currently be using, or will in the future be using, additional patented inventions from this portfolio." Also, the 587 Patent is a continuation of the 324 Patent, and, on January 27, 2021, ImberaTek disclosed the existence of the 324 Patent to Defendants and informed Defendants that

they were "likely utilizing and causing [their] customers and users to utilize" the 324 Patent and "should explore taking a license from ImberaTek to cover both [their] past and future utilization of" that patent. In addition, on February 22, 2024, ImberaTek informed Defendant that it had claim charts showing how Defendant's products infringe the 324 Patent, and on or around June 5, 2024, ImberaTek sent Defendant a claim chart reading the 324 Patent on Defendant's products. Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on information and belief, Defendant has had knowledge of the 587 Patent and that its activities infringe the 587 Patent since at least January 27, 2021 and no later than February 22, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least January 27, 2021 and no later than February 22, 2024 that its customers, distributors, and other purchasers of the 587 Accused Products infringed the 587 Patent at least because Defendant had knowledge of its infringement of the 587 Patent.

100.    In addition and in the alternative, by at least the date on which this Complaint was filed, ImberaTek disclosed the existence of the 587 Patent to Defendant and identified at least some of Defendant's activities that infringe the 587 Patent. Thus, Defendant has had knowledge of the 587 Patent and that its activities infringe the 587 Patent since at least the date on which this Complaint was filed. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least the date on which this Complaint was filed that its customers, distributors, and other purchasers of the 587 Accused Products are infringing the 587 Patent at least because Defendant has known that it is infringing the 587 Patent.

101.    Defendant's acts of infringement of the 587 Patent have been committed and are being committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and belief, and for at least the reasons discussed above, Defendant

could not reasonably or subjectively have believed that its actions do or did not constitute infringement of the 587 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

102.    On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 587 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 587 Accused Products in the United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 587 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (*e.g.*, https://web.archive.org/web/20230208045422/https://www.oneplus.com/us/11), press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the 587 Accused Products or products containing infringing chips in the 587 Accused Products. Defendant also manufactured the 587 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 587 Patent and its infringement since at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

103.    On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed and continues to contributorily

infringe one or more claims of the 587 Patent by offering to sell, selling, and/or importing into the United States material components of the 587 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 587 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use. For example, the 587 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 1 of the 587 Patent for the reasons set forth above.

104.     The infringing semiconductor chips of the 587 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

105.     ImberaTek has suffered and continues to suffer damages as a result of Defendant's infringement of the 587 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, ImberaTek respectfully requests the following relief:

(A) The entry of judgment in favor of ImberaTek, and against Defendant, that Defendant has infringed and continues to infringe one or more claims of the Asserted Patents;

(B) The entry of judgment in favor of ImberaTek, and against Defendant, that Defendant has willfully infringed one or more claims of the Asserted Patents;

(C) The entry of a judgment awarding ImberaTek all damages resulting from Defendant's infringement, including no less than a reasonable royalty, and that such amount be trebled based on Defendant's willful, intentional, and deliberate infringement pursuant to 35 U.S.C. § 284, including pre-judgment and post-judgment interest and without limitation under 35 U.S.C. § 287;

(D)    The entry of a judgment awarding ImberaTek its attorneys' fees pursuant to 35 U.S.C. § 285;

(E) The entry of judgment in favor of ImberaTek, and against Defendant, that interest, costs, and expenses be awarded in favor of ImberaTek;

(F) An accounting and/or supplemental damages for all damages occurring after any discovery cutoff;

(G) A grant of preliminary and permanent injunctions enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them, from infringing, contributing to the infringement of, or inducing the infringement of the Asserted Patents that have not expired; and

(H) That this Court order such other relief as the Court may deem just and proper.

### **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, ImberaTek respectfully demands a trial by jury in this Action on all issues so triable.


Dated: February 23, 2026

Respectfully submitted,


*/s/ Geoff Culbertson*
Peter J. McAndrews (Lead Counsel)
pmcandrews@mcandrews-ip.com
Matthew G. McAndrews
mmcandrews@mcandrews-ip.com
McANDREWS, HELD & MALLOY, LTD.
500 West Madison St., 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000
Facsimile: (312) 775-8100

Geoff Culbertson
Texas Bar No. 24045732
gpc@texarkanalaw.com
Kelly Tidwell
Texas Bar No. 20020580
kbt@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233

*Attorneys for Plaintiff,*
ImberaTek, LLC